UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

2019 MAY -7 P 5: 18

STEPHEN C. DRIES
CLERK

UNITED STATES OF AMERICA,

Plaintiff,

v.

ARCHIE G. OVERBY,

Defendant.

Case No. 19-CR-
[18 U.S.C. §§ 656 & 1344]
**Green Bay Division**

**19-CR-84**

## INDICTMENT

**THE GRAND JURY CHARGES THAT:**

**Allegations Common to All Counts**

1. First National Bank (FNB) was a nationally chartered bank with its main branch in the City of Waupaca, in the State and Eastern District of Wisconsin, and smaller branches in other communities in Central Wisconsin and the Texas panhandle.

2. FNB was regulated by the Office of the Comptroller of Currency (OCC), a division of the United States Department of Treasury.

3. The deposits of FNB were insured by the Federal Deposit Insurance Corporation (FDIC).

4. FNB was a wholly owned subsidiary of Waupaca Bancorporation, Inc. (WBC), a privately held S-Corporation with approximately 200 shareholders, including FNB employees who owned stock through the Employee Stock Option Program.

5. The affairs of FNB were overseen by a board of directors, several of whom were also employed as officers at FNB.

1

5. Archie G. Overby was the president, CEO and Chairman of the Board of directors of FNB, and a board member and shareholder of WBC.

## COUNTS ONE THROUGH TWELVE

## BANK FRAUD

6. From at least January 1, 2010, and continuing through mid to late 2013, the exact dates being unknown to the grand jury, in the State and Eastern District of Wisconsin and elsewhere,

### ARCHIE G. OVERBY

knowingly devised and executed a scheme to defraud FNB the shareholders of WBC and to obtain money and funds under the custody and control of FNB, by means of materially false and fraudulent pretenses, representations and promises, and by the omission of material facts (the "scheme"), which scheme is more fully described below.

### The Scheme

7. Using his position at FNB, Overby fraudulently expensed to the bank personal travel, entertainment, and meals for himself, his wife, various close and extended family members, and friends and associates, all of which had no legitimate banking purpose.

8. Between 2010 and 2013, Overby's personal travel included yearly trips to a luxury spa in Tucson, Arizona, and non-bank related trips to Chicago, Illinois; New York, New York; Los Angeles, California; Houston, Dallas, Austin, and San Antonio, Texas; Charlotte, North Carolina; Denver, Colorado; Orlando, Florida; St. Maarten; Grand Cayman Island; and Tanzania.

9. Overby's personal travel included airfare, frequently first class, for himself, his wife, and others; lodging at luxury hotels and resorts including Trump International, the

2

Mandarin Oriental, and the Phillips Club in New York City; the Grand Hotel on Mackinac Island, Michigan; Hotels ZaZa and Lumen in Dallas, Texas; Omni Hotel and Resort, in Westside Houston, Texas; The Four Seasons Hotel in Chicago, Illinois; and Walt Disney Resorts in Orlando, Florida.

10. Overby's bank-expensed personal entertainment included at least three safaris and treks in Tanzania, theater tickets and tickets to entertainment venues in Wisconsin, North Carolina, and New York City, among others.

11. To execute the scheme, Overby charged the majority of his personal travel, entertainment, and dining-related expenses to his bank-issued American Express business account, knowing that the expenses were not bank-related business expenses.

12. In order to further execute his fraud scheme, Overby directed other FNB employees to pay the American Express statements containing his personal travel, entertainment, and dining charges in their entirety, using funds drawn from the FNB general ledger, and further directed bank employees to book these expenditures to the bank's non-deductible bank operating account.

13. On at least one occasion, Overby booked personal travel and entertainment to his personal American Express card, and directed bank employees to pay the statements for those expenses, also using FNB funds, and he directed them to book the expenditures to the bank's non-deductible operating account.

14. Overby sought to disguise the true nature of some of his large personal expenditures by directing that the expenses be accrued on the bank's books over a period of time, thus insuring that the expenses would not appear in the bank's profit and loss column in the

3

month they were incurred, and knowing that this treatment would cause accrual accounts to show a negative balance.

15. By directing payments to be booked in this manner, Overby caused other FNB employees to make false and fraudulent entries in FNB's books and records.

16. In furtherance of the scheme and to conceal its true nature, Overby caused his personal bank paid expenses to be summarized, along with other legitimate bank expenses, in a third quarter miscellaneous expense letter to the board without disclosing that he was the actual recipient of the majority of those expenses. The letter accurately stated that some of the reported expenses had no direct bank purpose, but falsely implied that the expenses were for the benefit of all employees and urged that the expenses be approved because they were necessary to encourage employee productivity.

17. When questioned about bank-paid personal expenses, Overby falsely stated that the expenses were part of the bank's fringe benefit policy and falsely represented that the expenses were reported to the board every year, when in fact the bank had no formal fringe benefit expense policy and the board received no information about the true nature of the expenses or who received them.

18. In furtherance of the scheme, and to conceal its true nature, Overby caused a letter that he had drafted to be presented to the board in the name of the bank's internal auditor. The letter falsely stated, among other misleading assertions, that the internal auditor had researched the area of bank-funded personal expenses and found there to be nothing nefarious about them.

19. In furtherance of the scheme, and to conceal its true nature, Overby falsely represented that his receipt of bank funds for the payment of personal expenses was part of his total compensation package, when in fact, the executive compensation committee, on which he

4

sat, never discussed or considered the cost of these personal expenses when determining the amount of his yearly salary and bonus.

20. As a result of this scheme, Overby caused the bank to pay approximately $1.2 million to fund non-bank related personal travel, entertainment, and meals, from a date in 2010 to a date in 2013.

## Executions of the Scheme

21. On or about the dates set forth below, in the State and Eastern District of Wisconsin, for the purpose of executing the above described scheme to defraud FNB and the shareholders of WBC, and to obtain money and funds under the custody and control of FNB by means of material false and fraudulent pretenses, representations and promises, and the omission of material facts, Archie Overby caused FNB bank personnel to pay, using FNB funds, the expenses generated by the below-described personal travel:

| Count | Approx. dates of travel | Approx. cost of travel | Description of travel | Date of FNB payment and FNB check # |
|---|---|---|---|---|
| One | 1/29/10-2/13/10 | $26,884.41 | Airline travel, lodging and services at Canyon Ranch Spa, Tucson, Arizona for Archie & Margaret Overby. | 1/29/10-ck. # 234705<br>2/24/10-ck. # 235007 |
| Two | 11/10/10-11/14/10 | $19,091.52 | Airline travel and lodging at Disney's Grand Floridian Resort and Spa for Archie & Margaret Overby. | 10/28/10-ck. # 238736<br>11/29/10-ck. # 239185 |
| Three | 1/29/11-2/9/11 | $24,788.05 | Airline travel, lodging and services at Canyon Ranch Spa, Tucson, Arizona for Archie & Margaret Overby. | 2/28/11-ck. # 240699 |
| Four | 4/1/11-4/14/11 | $34,524.23 | Airline travel, lodging and theater tickets in Chicago and New York, for Archie & Margaret Overby. | 5/2/11-ck. #241508 |

5

| | | | | |
|---|---|---|---|---|
| **Five** | 10/14/11-10/23/11 | $32,313.00 | Airline travel and "Tailor Made Tanzania Machame Route" Journey, Arusha Tanzania, booked through Abercrombie & Kent for Archie & Margaret Overby. | 10/28/11-ck.# 244008 |
| **Six** | 2/26/12-3/9/12 | $128,899.52 | Airline travel, insurance and safari to Mt. Kilimanjaro, through Aardvark Safaris, for Archie Overby & friends | 2/20/12-ck. # 245667 3/1/12-ck. # 245713 |
| **Seven** | 4/6/12-4/14/12 | $40,717.94 | Airline travel and lodging at Villas of Distinction, St. Maarten, through World Holdings Luxury Travel, for Archie & Margaret Overby & family. | 10/28/11-ck. # 244008 11/29/11-ck.#244444 3/1/12-ck. # 245713 5/1/12-ck. # 246946 |
| **Eight** | 7/1/12-7/11/12 | $21,112.84 | Airline travel, lodging, meals and shopping, New York for Archie & Margaret Overby & friends | 7/2/12-ck. # 247546 7/30/12-ck. # 247928 |
| **Nine** | 10/17/12-10/26/12 | $236,303.40 | Airline travel, insurance and African safari through Aardvark for Archie Overby, family & friends | 11/1/12-ck. #249065 10/1/12-ck. # 248625 |
| **Ten** | 11/6/12-11/29/12 | $105,554.57 | Airline travel, lodging, meals, and entertainment in New York City for Archie Overby, family & friends | 10/1/12-ck. # 248625 11/1/12-ck. # 249065 1/2/13-ck. # 249917 12/3/12-ck.# 249507 |
| **Eleven** | 3/19/13-3/28/13 | $60,659.39 | Airline, lodging and meals, Ritz Carlton-Grand Cayman Island, for Archie Overby & family | 3/28/13-ck. # 250941 4/23/13-General ledger transfer 5/1/13-ck. # 251290 |
| **Twelve** | 3/28/13-4/6/13 | $35,361.51 | Airline, lodging and shopping, New York, for Archie Overby & family | 4/19/13-ck. # 251204 5/1/13-ck. #251290 3/28/13-ck.# 250941 |

All in violation of Title 18, United States Code, Section 1344.

## COUNT THIRTEEN

## THE GRAND JURY FURTHER CHARGES THAT

### Misapplication of Funds by a Bank Officer

22. On or about July 30, 2013, in the State and Eastern District of Wisconsin and elsewhere,

**ARCHIE G. OVERBY,**

being an officer of FNB, a banking institution the deposits of which were insured by the Federal Deposit Insurance Corporation, did willfully misapply monies and funds of said bank, specifically, he caused FNB to provide him with approximately $320,930, for the payment of his personal income taxes.

All in violation of Title 18, United States Code, Section 656.

## Forfeiture Notice

23. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1344, set forth in Counts One through Twelve of this Indictment, or the offense in violation of Title 18, United States Code, Section 656, set forth in Count Thirteen of this Indictment, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of any such violation or violations. The property to be forfeited includes, but is not limited to, a sum of money equal to the proceeds derived from the offense or offenses of conviction.

24. If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL:

████████████████████
FOREPERSON

Dated: 5/7/19

MATTHEW D. KRUEGER
United States Attorney

8